# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | CASE NO. 12-MD-02311<br><br>HON. MARIANNE O. BATTANI |
| In Re: OCCUPANT SAFETY SYSTEMS CASES | |
| THIS RELATES TO:<br><br>ALL DIRECT PURCHASER ACTIONS | 2:12-cv-00601-MOB-MKM<br><br>2:16-cv-10002-MOB-MKM |

### DIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS WITH TOKAI RIKA AND TOYODA GOSEI DEFENDANTS AND PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS

Direct Purchaser Plaintiffs hereby move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for final approval of the proposed settlements with Defendants Tokai Rika Co., Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. and Defendants Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., and TG Missouri Corp., and the proposed plan for distribution of settlement funds.  In support of this motion, Plaintiffs rely upon the accompanying brief, which is incorporated by reference herein.

DATED: June 18, 2018

Respectfully submitted,

 /s/David H. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
FINK + ASSOCIATES LAW
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI 48304
(248) 971-2500

*Interim Liaison Counsel for the Direct Purchaser Plaintiffs*

Steven A. Kanner
William H. London
Michael E. Moskovitz
FREED KANNER LONDON
   & MILLEN LLC
2201 Waukegan Road, Suite 130
Bannockburn, IL  60015
Telephone: (224) 632-4500

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA  191037
Telephone: (215) 238-1700

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
Jeffrey L. Spector
SPECTOR ROSEMAN & KODROFF, P.C.
1818 Market Street, Suite 2500
Philadelphia, PA  19103
Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | CASE NO. 12-MD-02311 |
| | HON. MARIANNE O. BATTANI |
| In Re: OCCUPANT SAFETY SYSTEMS CASES | |
| THIS RELATES TO: | 2:12-cv-00601-MOB-MKM |
| ALL DIRECT PURCHASER ACTIONS | 2:16-cv-10002-MOB-MKM |

**BRIEF IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENTS**
**WITH TOKAI RIKA AND TOYODA GOSEI DEFENDANTS AND**
**PROPOSED PLAN FOR DISTRIBUTION OF SETTLEMENT FUNDS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

STATEMENT OF ISSUES PRESENTED .............................................................. vii

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ............... viii

INTRODUCTION ...................................................................................................... 1

I.      BACKGROUND ............................................................................................. 2

II.     TERMS OF THE SETTLEMENT AGREEMENTS ......................................... 5

III.    THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE AND ADEQUATE
        AND SHOULD BE APPROVED BY THE COURT ......................................... 7

        A.      The Governing Standards for Final Approval. ...................................... 7

        B.      The Proposed Settlements with Tokai Rika and Toyoda Gosei are Fair,
                Reasonable and Adequate. .................................................................. 9

                1.      The Likelihood of Plaintiffs' Success on the Merits Weighed Against the
                        Amount and Form of the Relief Offered in the Settlements Supports
                        Approval. .............................................................................. 10

                2.      The Complexity, Expense, and Likely Duration of Continued Litigation
                        Favor Approval. .................................................................... 12

                3.      The Judgment of Experienced Counsel Supports Approval. ............... 13

                4.      The Amount of Discovery Completed is Sufficient. ...................... 14

                5.      The Reaction of Class Members. ............................................. 14

                6.      The Settlements are the Product of Arm's-Length Negotiations. ......... 15

                7.      The Settlements are Consistent with the Public Interest. ................ 15

IV.     NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE
        PROCESS ...................................................................................... 15

V.      THE PROPOSED PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUNDS IS
        FAIR, REASONABLE AND ADEQUATE AND MERITS APPROVAL .............. 17

VI.     CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASSES FOR
        PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENTS IS
        APPROPRIATE ................................................................................ 19

        A.      The Proposed Direct Purchaser Settlement Classes Satisfy Rule 23(a). .............. 20

                1.      The Settlement Classes are Sufficiently Numerous. ...................... 20

                2.      There are Common Questions of Law and Fact. .......................... 21

                3.      Direct Purchaser Plaintiffs' Claims are Typical of
                        Those of the Settlement Classes. ........................................... 22

                4.      Plaintiffs Will Fairly and Adequately Protect the
                        Interests of the Classes. ...................................................... 23

i

B.    Plaintiffs' Claims Satisfy the Prerequisites of
      Rule 23(b)(3) for Settlement Purposes. ............................................. 24

      1.    Common Legal and Factual Questions Predominate. ............................. 24

      2.    A Class Action is Superior to Other Methods of Adjudication. ............... 25

VII.  CONCLUSION ................................................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................... 20, 24, 26

*Barry v. Corrigan*, 2015 WL 136238 (E.D. Mich. Jan 9, 2015) ................................................. 21

*Beattie v. CenturyTel, Inc.,* 511 F.3d 554 (6th Cir. 2007) ......................................................... 24

*Berry v. School Dist. of the City of Benton Harbor,*
    184 F.R.D. 93 (E.D. Mich. August 20, 1998) ........................................................................ 9

*Carson v. Am. Brands, Inc.,* 450 U.S. 79 (1981) ........................................................................ 9

*Date v. Sony Electronics, Inc.,*
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013) .................................... 13, 20, 22

*Dick v. Sprint Communications,* 297 F.R.D. 283 (W.D. Ky. 2014) .......................................... 7, 8

*Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.,*
    2010 WL 5439737 (E.D. Mich. Dec. 27, 2010) ...................................................................... 21

*Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448,
    2015 WL 110340 (E.D. Mich. Jan. 7, 2015) ............................................................................ 10

*Grenada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir. 1992) ...................................... 10, 15

*Griffin v. Flagstar Bancorp, Inc.,*
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ............................... passim

*Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555 (E.D. Mich. 2009) ........................................ 24

*In re Am. Med. Sys., Inc.,* 75 F.3d 1069 (6th Cir. 1996) ............................................................. 21

*In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) .............. 18

*In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336 (E.D. Pa. 2007) .................... 7

*In re Automotive Parts Antitrust Litig.,*
    2:12-md-02311, 2014 WL 4272774 (E.D. Mich. Aug. 29, 2014) ............................................. 3

*In re Automotive Parts Antitrust Litig.,*
    2:12-md-02311, 2014 WL 4272784 (E.D. Mich. Aug. 29, 2014) ............................................. 3

*In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297 (E.D. Mich. 2007) ...................................... 26

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ............................. passim

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08–MD-01998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ...................................... 7

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483 (E.D. Mich. 2008) .............. 13

*In re Flat Glass Antitrust Litig.*, 191 F.R.D 472 (W.D. Pa. 1999) ........................................ 21, 22

*In re Flonase Antitrust Litig.*, 284 F.R.D. 207 (E.D. Pa. 2012)...................................................... 26

*In re Flonase Antitrust Litig.,* 291 F.R.D. 93 (E.D. Pa. 2013)....................................................... 17

*In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ........................... 14

*In re Ikon Office Solutions, Inc., Sec. Litig.,* 194 F.R.D. 166 (E.D. Pa. 2000) ............................ 17

*In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136 (E.D. Pa. 2013).............................. 16

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003).................................. 6, 12

*In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y 1996)...................... 26

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ................................. 14, 17

*In re Packaged Ice Antitrust Litig.*,
   No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011).................................. passim

*In re Polyurethane Foam Antitrust Litig.*,
   No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ....................................... 10

*In re Scrap Metal Antitrust Litig.,* 527 F.3d 517 (6th Cir. 2008)................................................... 24

*In re Southeastern Milk Antitrust Litig.*,
   2:07-CV-208, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ................................................... 7

*In re Southeastern Milk Antitrust Litig.*,
   No. 2:07-CV-208, 2010 WL 3521747 (E.D. Tenn. Sept. 7, 2010)........................................... 24

*In re Telectronics Pacing Sys. Inc.*,
   137 F. Supp. 2d 985 (S.D. Ohio 2001) ......................................................................... 9, 12, 14

*In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1737867 (D. D.C. March 31, 2000)........ 18

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ...................................................................................... 20, 21, 22

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
   No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006) ........................................ passim

*IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006) .......................... 8, 10, 11

*Law v. National Collegiate Athletic Ass'n.*, 108 F. Supp. 2d 1193 (D. Kan. 2000) .................... 17

*Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007 (E.D. Mich. 2005) ..................................... 8

*Marsden v. Select Medical Corp.*, 246 F.R.D. 480 (E.D. Pa. 2007) ............................................ 21

*Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) ............................................ 16

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006) ............................................................................................ 8

*Olden v. Gardner*, 294 Fed. Appx. 210 (6th Cir. 2008) .............................................................. 8

*Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601 (E.D. Wisc. 2000) .............................. 26

*Prandin Direct Purchaser Antitrust Litig.*, C.A.
   No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ...................... 18

*Senter v. Gen. Motors Corp.,* 532 F.2d 511 (6th Cir. 1976) ........................................................ 23

*Sheick v. Auto. Component Carrier LLC*, No.
   2:09-cv-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010) ..................................... passim

*Sheick v. Automotive Component Carrier LLC,*
   No. 09–14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ............................................. 23

*Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545 (E.D. Mich. Feb. 24, 2016) ............. 8

*Smith v. MCI Telecoms Corp.*,
   No. Civ. A. 87-2110-EEO, 1993 WL 142006 (D. Kan. April 28, 1993) ................................ 17

*Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) .................................... 20, 21, 22

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ............................................. 9, 17

*Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262 (E.D. Ky. 2009) ............................... 20

*UAW v. General Motors Corp.,* 497 F.3d 615 (6th Cir. 2007) ............................................. passim

*Van Horn v. Trickey,* 840 F.2d 604 (8th Cir. 1988) ..................................................................... 9

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) .......................................................... 8, 12, 13
**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................ 20, 24

Fed. R. Civ. P. 23(a)(2) ................................................................................... 21, 22

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 22

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 23

Fed. R. Civ. P. 23(b) ....................................................................................... 20, 24

Fed. R. Civ. P. 23(b)(3) ............................................................................. 20, 24, 25

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 16

Fed. R. Civ. P. 23(c)(3) ......................................................................................... 16

Fed. R. Civ. P. 23(e)(1) .................................................................................... 15, 16

Fed. R. Civ. P. 23(e)(2) ....................................................................................... 9, 10

Fed. R. Civ. P. 23(g) ............................................................................................. 23

**Other Authorities**

4 *Newberg on Class Actions*, § 12.35 (4th ed. 2002) ....................................... 17, 18

4 *Newberg on Class Actions,* § 18.05-15 (3d ed. 1992) ........................................ 21

**STATEMENT OF ISSUES PRESENTED**

1. Whether the proposed settlements between the Direct Purchaser Plaintiffs and Defendants Tokai Rika Co., Ltd. and TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc. (collectively, "Tokai Rika" or the "Tokai Rika Defendants") and Defendants Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., and TG Missouri Corp. (collectively, "Toyoda Gosei" or the "Toyoda Gosei Defendants") (all Defendants referenced in this paragraph collectively, the "Settling Defendants"), as set forth in the Settlement Agreements between the Direct Purchaser Plaintiffs and the respective Settling Defendants, are fair, reasonable and adequate, and whether the Court should approve the settlements under Fed. R. Civ. P. 23;

2. Whether the Court should certify the Tokai Rika and Toyoda Gosei Settlement Classes for purposes of the settlements only; and

3. Whether the Court should approve the proposed plan for distribution of settlement funds.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)

*In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497 (E.D. Mich.
    June 20, 2016)

*Date v. Sony Electronics, Inc.*,
    No. 07-15474, 2013 WL 3945981 (E.D. Mich. Jul. 31, 2013)

*Griffin v. Flagstar Bancorp, Inc.,*
    No. 2:10-cv-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)

*In re: Packaged Ice Antitrust Litig.*,
    No. 08-MD-01952, 2011 WL 717519 (E.D. Mich. Feb. 22, 2011)

*In re Scrap Metal Antitrust Litig.*,
    527 F.3d 517 (6th Cir. 2008)

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*,
    No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006)

*Sheick v. Auto. Component Carrier LLC*,
    No. 2:09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010)

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998)

*In re Telectronics Pacing Sys. Inc.*,
    137 F. Supp. 2d 985 (S.D. Ohio 2001)

*UAW v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)

## INTRODUCTION

Direct Purchaser Plaintiffs, on behalf of Settlement Classes comprised of direct purchasers of Occupant Safety Systems in the United States, have reached settlements with the Tokai Rika and Toyoda Gosei Defendants.  Under the terms of the proposed settlements, the Settling Defendants will pay a total of $38,000,000[1] (the "Toyoda Gosei and Tokai Rika Settlement Fund") and provide cooperation to assist Direct Purchaser Plaintiffs in the prosecution of their claims against the remaining Defendants.

The Tokai Rika and Toyoda Gosei settlements were reached after this court gave final approval to a $35,516,800 settlement with the Autoliv Defendants (2:12-cv-00601, Doc. No. 110), and to a $6,500,000 settlement with the TRW Defendants.  (2:12-cv-00601, Doc. No. 130). When added to the Autoliv and TRW settlements, the total of all settlements reached in this case is $80,016,800, plus accruing interest.

In connection with the approval process for these settlements, Plaintiffs propose to make a distribution to Settlement Class members, subject to Court approval, from the Toyoda Gosei and Tokai Rika Settlement Fund, and will apply to the Court for an award of attorneys' fees and expenses, and incentive awards to the Class Representatives.[2]

---

[1] As discussed in Section II of this Brief, and in the Notice (attached as Exhibit A), the Toyoda Gosei settlement amount is subject to reduction, and the Tokai Rika settlement may be rescinded, based on valid and timely requests for exclusion by Settlement Class members. The specific terms applicable to each of these settlements are set forth in confidential letter agreements between these Defendants and the Settlement Classes that are available to the Court for *in camera* review upon its request.  The presence of the Tokai Rika rescission provision, and the maximum amount of the Toyoda Gosei settlement amount reduction, are disclosed in the Notice.  The effect of any opt-outs on the settlements will be determined at the end of the period to request exclusion from the Settlement Classes.  After that date, and prior to the final fairness hearing, Settlement Class Counsel will file with the Court a report on opt-outs, if any.

[2] A separate motion for an award of attorneys' fees and reimbursement of litigation costs and expenses, and incentive awards to the Class Representatives is being filed today with the Court.

1

For the reasons set forth herein, Direct Purchaser Plaintiffs respectfully submit that the proposed settlements are fair, reasonable and adequate, and should be approved by the Court. Settlement Class Counsel also request that the Court approve the proposed plan for distribution of the settlement proceeds to Settlement Class members.   Submitted herewith are proposed Orders and Final Judgments agreed to by Direct Purchaser Plaintiffs and the Settling Defendants, and a proposed order granting the proposed distribution plan.

## I.      BACKGROUND

In 2012, class action lawsuits were filed against the Defendants by Direct Purchaser Plaintiffs on behalf of a class of direct purchasers of "Occupant Safety Systems."[3]  On August 7, 2012, the Court appointed the undersigned law firms Interim Lead and Liaison Counsel for the Direct Purchaser Plaintiffs.  (2:12-md-02311, Doc. No. 271).  The Direct Purchaser Plaintiffs' actions were consolidated and coordinated for pretrial purposes on January 15, 2013.  (2:12-cv-00600, Doc. No. 64).

Direct Purchaser Plaintiffs filed a Consolidated Amended Class Action Complaint ("Consolidated Amended Complaint") on July 3, 2013 (2:12-cv-00601, Doc. No. 65), and a Second Consolidated Amended Class Action Complaint on February 28, 2014.  (2:12-cv-00601, Doc. No. 81).  Plaintiffs allege that Defendants entered into a conspiracy to suppress and eliminate competition for Occupant Safety Systems by agreeing to fix, maintain, or stabilize prices, rig bids, and allocate the supply of Occupant Safety Systems, in violation of federal antitrust laws.  Plaintiffs further allege that as a result of the conspiracy, they and other direct purchasers of Occupant Safety Systems were injured by paying more for those products than

---

[3] "Occupant Safety Systems," for purposes of the settlement, are seat belts, airbags, steering wheels or steering systems, safety electronic systems, and related parts and components.

they would have paid in the absence of the alleged illegal conduct, and they seek recovery of treble damages, together with reimbursement of costs and an award of attorneys' fees.

Defendants filed multiple motions to dismiss Direct Purchaser Plaintiffs' Consolidated Amended Complaint, including a collective Rule 12(b)(6) motion that was filed October 21, 2013. (2:12-cv-00601, Doc. No. 75). The Court denied these motions. *In re Automotive Parts Antitrust Litig.*, 2:12-md-02311, 2014 WL 4272784 (E.D. Mich. Aug. 29, 2014); *In re Automotive Parts Antitrust Litig.*, 2:12-md-02311, 2014 WL 4272774 (E.D. Mich. Aug. 29, 2014).[4]

Plaintiffs reached a $35,516,800 settlement with the Autoliv Defendants on May 30, 2014. (2:12-cv-00601, Doc. No. 94-2). On July 9, 2014, this Court preliminarily approved the Autoliv settlement and authorized dissemination of notice to the Autoliv Settlement Class. (2:12-cv-00601, Doc. No. 97 at ¶ 4). Notice was disseminated to Settlement Class members in accordance with the terms of the Court's Order and, following a hearing on December 3, 2014, the Court granted final approval to the Autoliv settlement on January 7, 2015. (2:12-cv-00601, Doc. No. 110).

On February 25, 2015, Plaintiffs reached a $6,500,000 settlement with the TRW Defendants. (2:12-cv-00601, Doc. No. 113-1). On April 9, 2015, this Court preliminarily approved the proposed TRW settlement and authorized dissemination of notice to the TRW Settlement Class. (2:12-cv-00601, Doc. No. 116 at ¶ 4). Notice was disseminated to Settlement Class members and, following a hearing on July 14, 2015, the Court granted final approval to the TRW settlement on July 24, 2015. (2:12-cv-00601, Doc. No. 130).

---

[4] On January 1, 2016, Plaintiffs filed a complaint that added NM Holdings Company, LLC as an additional Plaintiff in the Occupant Safety Systems Litigation, and Toyoda Gosei as an additional Defendant. *NM Holdings Company, LLC   et al. v. Toyoda Gosei Co. Ltd, et al*, Case No. 2:16-cv-10002, Doc No. ¶ 1.

3

An Order authorizing distribution of the Autoliv and TRW settlement funds was entered by the Court on April 18, 2017.  (2:12-cv-00601, Doc. No. 145).  Checks were sent to approved claimants on May 23, 2017.

On November 14, 2017, Plaintiffs reached a proposed $34,000,000 settlement with the Toyoda Gosei Defendants.  (2:12-cv-00601, Doc. No. 152-1).  On January 25, 2018, this Court preliminarily approved the proposed Toyoda Gosei settlement.  (2:12-cv-00601, Doc. No. 153) (the "Preliminary Approval Order").

Plaintiffs reached a $4,000,000 settlement with the Tokai Rika Defendants on January 29, 2018.  (2:12-cv-00601, Doc. No. 155-2).  On April 25, 2018, this Court preliminarily approved the Tokai Rika settlement and authorized dissemination of notice of the proposed settlements and related matters to members of the Tokai Rika and Toyoda Gosei Settlement Classes.  (2:12-cv-00601, Doc. No. 156) (the "Notice Order").

Pursuant to the Notice Order, on May 16, 2018, 1,342 copies of the Notice of Proposed Settlements of Direct Purchaser Class Action with Tokai Rika and Toyoda Gosei Defendants and Hearing on Settlement Approval and Related Matters, and Claim Form (the "Notice") were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants. Further, a Summary Notice of Proposed Settlements of Direct Purchaser Class Action with Tokai Rika and Toyoda Gosei Defendants and Hearing on Settlement Approval and Related Matters (the "Summary Notice") was published in one edition of *Automotive News*, and in the national edition of *The Wall Street Journal,* on May 21, 2018.  In addition, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[5]

---

[5] Counsel for Tokai Rika and for Toyoda Gosei have informed Settlement Class Counsel that their respective clients fulfilled their obligations under 28 U.S.C. § 1715 (the "Class Action

The deadline for submission of objections to the proposed settlements and related matters, and for requests for exclusion from the Settlement Classes, is July 11, 2018.  To date, there have been no objections to either the proposed settlement or distribution plan, or requests for exclusion.

## II.     TERMS OF THE SETTLEMENT AGREEMENTS

Plaintiffs, on behalf of the Toyoda Gosei Settlement Class, have entered into a settlement with Toyoda Gosei dated November 14, 2017 (the "Toyoda Gosei Settlement Agreement"), under which Toyoda Gosei has agreed to pay $34,000,000.  The Toyoda Gosei Settlement Agreement gives Toyoda Gosei the right to reduce its settlement payment, but in no event to less than $14,250,000, based upon valid requests for exclusion by members of the Toyoda Gosei Settlement Class. Toyoda Gosei has also agreed to cooperate with Plaintiffs in the continuing prosecution of the Takata Defendants, who are the only remaining non-settling Defendants.

Plaintiffs, on behalf of the Tokai Rika Settlement Class, have entered into a settlement agreement with Tokai Rika dated January 29, 2018 (the "Tokai Rika Settlement Agreement"), under which Tokai Rika has agreed to pay $4,000,000.  The Tokai Rika Settlement Agreement gives Tokai Rika and the Plaintiffs the right to terminate the settlement based upon the number of Tokai Rika Settlement Class members that request exclusion.  Pursuant to the settlement, Tokai Rika has also agreed to cooperate with Plaintiffs.

The nature and extent of the cooperation agreed to by Tokai Rika and Toyoda Gosei is described in detail in their respective Settlement Agreements.  Copies of the Agreements are on file with the Clerk of Court and available on-line at www.autopartsantitrustlitigation.com.  Tokai Rika and Toyoda Gosei have agreed to provide some or all of the following cooperation: (a) the

---

Fairness Act of 2005"), by disseminating the requisite notice to the appropriate federal and state officials on April 11, 2018 and January 19, 2018, respectively.

production of documents and data potentially relevant to Plaintiffs' claims; (b) assistance in understanding information produced to Plaintiffs and facilitating the use of such information at trial; (c) meetings between Settlement Class Counsel and the Settling Defendants' attorneys who will provide proffers of information relevant to the claims in this litigation; (d) witness interviews; (e) and declarations or affidavits.  As stated in *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003), such cooperation provisions provide a "substantial benefit" to the class and "strongly militate[] toward approval of the Settlement Agreement." This cooperation will enhance and strengthen Direct Purchaser Plaintiffs' prosecution of their claims against the remaining Defendants.

In exchange for the settlement payments and cooperation, the proposed settlements provide, *inter alia,* for the release by Plaintiffs, and the other members of the Settlement Classes, of "Released Claims" against Tokai Rika, Toyoda Gosei, and other "Releasees" (as defined in the Settlement Agreements).  The Released Claims are antitrust and similar claims arising from the conduct alleged in the Complaints.  The releases specifically exclude certain claims against Tokai Rika and Toyoda Gosei, including claims: based upon indirect purchases of Occupant Safety Systems; based on negligence, personal injury, or product defects; relating to purchases of Occupant Safety Systems outside the United States; and concerning any automotive part other than Occupant Safety Systems.

Moreover, Tokai Rika's and Toyoda Gosei's sales to Settlement Class members remain in the case as a potential basis for joint and several liability and damages against other current or future Defendants in the litigation.

Plaintiffs believe that the proposed settlements are fair, reasonable and adequate to the Settlement Classes.  The Settlement Agreements were consummated only after extensive arms-

length negotiations between experienced and sophisticated counsel. They are the result of good faith negotiations, after factual investigation and legal analysis by experienced counsel, and are based upon the attorneys' full understanding of the strengths and weaknesses of their respective positions.

Settlements reached by experienced counsel that result from arm's-length negotiations are entitled to deference from the court. *Dick v. Sprint Communications,* 297 F.R.D. 283, 296 (W.D. Ky. 2014) ("Giving substantial weight to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, is appropriate.") (quoting *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08–MD-01998, 2010 WL 3341200, at *4 (W.D. Ky. Aug. 23, 2010)); *accord In re Southeastern Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).

In sum, because the proposed Tokai Rika and Toyoda Gosei settlements were negotiated at arm's length by experienced counsel knowledgeable about the facts and the law, and are fair, reasonable, and adequate, Plaintiffs respectfully submit that they merit final approval.

## III.  THE PROPOSED SETTLEMENTS ARE FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.  The Governing Standards for Final Approval.

Both the Sixth Circuit and courts in the Eastern District of Michigan "have recognized that the law favors the settlement of class action lawsuits." *See, e.g., In re Automotive Parts Antitrust Litig.,* 12-MD-02311, 2:12-cv-00103, Doc. No. 497, at 11 (E.D. Mich. June 20, 2016) (quoting *Griffin v. Flagstar Bancorp, Inc.*, No. 2:10-cv-10610, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013). *Accord UAW v. General Motors Corp.,* 497 F.3d 615, 632 (6th Cir. 2007)

7

(federal policy favors settlement of class actions); *Sims v. Pfizer, Inc.*, No. 1:10-CV-10743, 2016 WL 772545, at *6 (E.D. Mich. Feb. 24, 2016).

A court's inquiry on final approval is whether the proposed settlement is "fair, adequate, and reasonable to those it affects and whether it is in the public interest." *Lessard v. City of Allen Park,* 372 F. Supp. 2d 1007, 1009 (E.D. Mich. 2005) (citing *Williams v. Vukovich*, 720 F.2d 909, 921-23 (6th Cir. 1983)); *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008). This determination requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Cardizem CD Antitrust Litig.,* 218 F.R.D. 508, 522 (E.D. Mich. 2003); *Sheick v. Auto. Component Carrier LLC*, No. 2:09-cv-14429, 2010 WL 4136958, at *14-15 (E.D. Mich. Oct. 18, 2010).

A court has broad discretion in deciding whether to approve a class action settlement. *UAW*, 497 F.3d at 636. In exercising this discretion, courts give considerable weight and deference to the views of experienced counsel as to the merits of an arm's-length settlement. *Dick*, 297 F.R.D. at 297 ("The Court defers to the judgment of the experienced counsel associated with the case, who have assessed the relative risks and benefits of litigation."). Indeed, a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 632 (W.D. Ky. 2006) (citations omitted).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that a judge reviewing a settlement should not "substitute his or her judgment for that of the litigants and their counsel." *IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006). In light of the uncertainties and risks inherent in

any litigation, courts take a common-sense approach and approve class action settlements if they fall within a "range of reasonableness." *Sheick,* 2010 WL 4136958, at *15 (citation omitted). Moreover, a district court should guard against demanding too large a settlement, because a settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *23 (E.D. Mich. July 13, 2006) (citation omitted); *accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 324 (3d Cir. 2011).

### B. The Proposed Settlements with Tokai Rika and Toyoda Gosei are Fair, Reasonable and Adequate.

Fed. R. Civ. P. 23(e)(2) provides that a court may approve a settlement that would bind class members only after a hearing and on finding that the settlement is "fair, reasonable, and adequate." *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *8 (E.D. Mich. Feb. 22, 2011). Generally, in evaluating a proposed class settlement, the court does "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n. 14 (1981). There are two reasons for this. First, the object of settlement is to avoid the determination of contested issues; so the approval process should not be converted into an abbreviated trial on the merits. *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988). Second, "[b]eing a preferred means of dispute resolution, there is a strong presumption by courts in favor of settlement." *In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1008-09 (S.D. Ohio 2001). This is particularly true in the case of class actions. *Berry v. School Dist. of the City of Benton Harbor,* 184 F.R.D. 93, 97 (E.D. Mich. August 20, 1998).

9

Courts in the Sixth Circuit have identified a number of factors that are relevant in determining whether a settlement is fair, reasonable and adequate: (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (2) the complexity, expense, and likely duration of further litigation; (3) the opinions of class counsel and class representatives; (4) the amount of discovery engaged in by the parties; (5) the reaction of absent class members; (6) the risk of fraud or collusion; and (7) the public interest. *Packaged Ice*, 2011 WL 717519, at *8. *Accord Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 10; *UAW*, 497 F.3d at 631; *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 1639269, at *3 (N.D. Ohio Feb. 26, 2015), *appeal dismissed* (Dec. 4, 2015). No single factor is dispositive. When evaluating the fairness of a settlement, the court may weigh each factor based on the circumstances of the case, *Ford*, 2006 WL 1984363, at *21, and may "choose to consider only those factors that are relevant to the settlement at hand. *Id.* at *22. *See also Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992) (district court enjoys wide discretion in assessing the weight and applicability of factors). As discussed more fully below, the Tokai Rika and Toyoda Gosei settlements are fair, reasonable, and adequate under the relevant criteria, and should be approved under Rule 23(e)(2).

### 1. The Likelihood of Plaintiffs' Success on the Merits Weighed Against the Amount and Form of the Relief Offered in the Settlements Supports Approval.

Courts should assess the fairness of a class action settlement "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs inherent in taking any litigation to completion.'" *Sheick,* 2010 WL 4136958, at *15 (quoting *IUE-CWA*, 238 F.R.D. at 594); *Ford v. Fed.-Mogul Corp.*, No. 2:09-CV-14448, 2015 WL 110340, at *6 (E.D. Mich. Jan. 7, 2015).

10

The fairness of a class action settlement "turns in large part on the bona fides of the parties' legal dispute." *UAW*, 497 F.3d at 631. In assessing the parties' dispute and weighing the likelihood of plaintiffs' success on the merits if the litigation continues against the benefits of the settlement, the ultimate question for the court is whether the interests of the class as a whole are better served if the litigation is resolved by settlement rather than pursued. *Sheick*, 2010 WL 4136958, at *16 (citing *IUE–CWA*, 238 F.R.D. at 595).

The settlements provide an excellent result for the Settlement Classes in light of the substantial risks of continuing litigation. In negotiating the settlements, Settlement Class Counsel took into account the evidence supporting Direct Purchaser Plaintiffs' claims, the dollar volume of Tokai Rika's and Toyoda Gosei's Occupant Safety Systems sales, the defenses that Tokai Rika and Toyoda Gosei raised or were expected to raise, and the value provided by Tokai Rika's and Toyoda Gosei's agreement to cooperate with Direct Purchaser Plaintiffs in the continued prosecution of their claims against the Non-Settling Defendants.

Plaintiffs are optimistic about the likelihood of ultimate success in this matter, but success is not certain. As this Court has observed, success is not guaranteed even in those instances where a settling defendant has pleaded guilty in a criminal proceeding brought by the Department of Justice, which is not required to prove class-wide impact or damages, both of which require complex and expensive expert analyses, the outcome of which is uncertain. *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 11.

Tokai Rika and Toyoda Gosei are each represented by highly experienced and competent counsel, and Plaintiffs believe that they were prepared to defend this case through trial and appeal, if necessary. Litigation risk is inherent in any litigation, and this is particularly true with respect to class actions. So, while they are optimistic about the outcome of this litigation,

Plaintiff must acknowledge the risk that either or both of the Settling Defendants could prevail with respect to certain legal or factual issues, which could result in reducing or eliminating any potential recovery.

These risks must be weighed against the settlement consideration: cash payments by Tokai Rika ($4,000,000) and Toyoda Gosei ($34,000,000) totaling $38,000,000[6], together with cooperation by each of the Settling Defendants, which is valuable to the Settlement Class members in any litigation against the remaining Defendants. *See Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 12 ("cooperation strongly militates toward approval" of the settlements) (quoting *Linerboard*, 292 F. Supp. 2d 643).

Settlement Class Counsel believe that the settlements are an excellent result. Weighing the settlements' benefits against the risks of continued litigation tilts the scale toward approval. *See Griffin*, 2013 WL 6511860, at *4; *Packaged Ice,* 2011 WL 717519 at *9.

### 2.   The Complexity, Expense, and Likely Duration of Continued Litigation Favor Approval.

"Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'" *Cardizem,* 218 F.R.D. at 523 (quoting *Vukovich,* 720 F.2d at 922). "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *Id.* at 523. This is particularly true for class actions, which are "inherently complex." *Telectronics,* 137 F. Supp. 2d at 1013 (settlement avoids the costs, delays, and multitude of other problems associated with complex class actions).

Plaintiffs are still litigating against the remaining Defendants, so it would be imprudent to discuss with any specificity Settlement Class Counsel's analysis of the risks of litigation because the Non-Settling Defendants could then use such disclosures against Plaintiffs going forward.

---

[6] Subject to possible reduction for valid and timely opt-outs.

Settlement Class Counsel believe it is sufficient at this point to state that complex antitrust litigation of this scope has inherent risks that the settlement at least partially negates.

The proposed settlements eliminate the risks, expense, and delay that would otherwise exist with respect to a recovery from Tokai Rika and Toyoda Gosei, ensures a substantial payment to the Settlement Classes, and provides the Settlement Classes with cooperation against the remaining Defendants.  This factor also supports final approval of the proposed settlements.

### 3.   The Judgment of Experienced Counsel Supports Approval.

In deciding whether to approve a proposed settlement, "[t]he Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties."  *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008).  Counsel's judgment "that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'"  *Packaged Ice*, 2011 WL 717519, at *11 (quoting *Sheick*, 2010 WL 4136958, at *18); *Fed.-Mogul Corp.*, 2015 WL 110340, at *9.  "In the absence of evidence of collusion (there is none here) this Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'"  *Date v. Sony Electronics, Inc.*, No. 07-15474, 2013 WL 3945981, at *9 (E.D. Mich. Jul. 31, 2013) (quoting *Vukovich*, 720 F.2d at 922–23).

Settlement Class Counsel have extensive experience in handling class action antitrust and other complex litigation.  They have represented direct purchaser plaintiffs from the inception of the *Automotive Parts Antitrust Litigation* and negotiated these settlements at arm's length with well-respected and experienced counsel for Tokai Rika and Toyoda Gosei.  Settlement Class Counsel believe the proposed settlement is an excellent result.

13

### 4.    The Amount of Discovery Completed is Sufficient.

Settlement Class Counsel have had access to relevant information about the Occupant Safety Systems conspiracy through the production and review of documents, Defendants' written discovery responses, proffers of information, and interviews. Relevant information also was obtained from the related criminal litigation, and through Settlement Class Counsel's investigation.[7] The information from these sources and their factual and legal analysis allowed Settlement Class Counsel to evaluate not only the strengths and weaknesses of the legal case, but also the potential value of the promised cooperation.  Based on this information, Settlement Class Counsel believe that the proposed settlements with Tokai Rika and Toyoda Gosei are fair, reasonable, and in the best interests of the Settlement Classes, and their opinion supports final approval of the settlement.

### 5.    The Reaction of Class Members.

The Court cannot assess this factor at this time.  But even if there were to be objections, their "existence… does not mean that the settlement is unfair." *Telectronics,* 137 F. Supp. 2d at 1018.  A "scarcity of objections – relative to the number of class members overall – indicates broad support for the settlement among Class Members."  *Sheick*, 2010 WL 4136958 at *22; *accord In re Cardizem,* 218 F.R.D. at 527.  Settlement Class Counsel will file with the Court a report on objections or opt-outs, if any, after the applicable deadlines, and prior to the final fairness hearing.

---

[7] Although the amount of discovery completed is a factor to be considered in the settlement approval process, there is no baseline amount of discovery required to satisfy this factor.  *Packaged Ice*, 2010 WL 3070161, at *5-6.  The "question is whether the parties had adequate information about their claims."  *Griffin*, 2013 WL 6511860, at *4 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004)).  *Accord In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 6209188, at *13 (E.D. Mich. Dec. 13, 2011) (absence of formal discovery not an obstacle to settlement approval).

6. **The Settlements are the Product of Arm's-Length Negotiations.**

There is a presumption that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion. *Griffin*, 2013 WL 6511860, at *3; *Packaged Ice*, 2011 WL 717519, at *12; *Ford,* 2006 WL 1984363, at *26; *Sheick,* 2010 WL 4136958, at *19-20. Settlement Class Counsel have extensive experience in handling class action antitrust cases and other complex litigation, and they negotiated at arm's length with counsel for each of the Settling Defendants. Consideration of this factor fully supports final approval of the settlement as well.

7. **The Settlements are Consistent with the Public Interest.**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Cardizem*, 218 F.R.D. at 530 (quoting *Grenada*, 962 F.2d at 1205). *Accord Griffin,* 2013 WL 6511860, at *5*; Packaged Ice*, 2011 WL 717519, at *12. Plaintiffs submit that there is no countervailing public interest that provides a reason to disapprove the proposed settlements. *Griffin*, 2013 WL 6511860, at *5. This factor also supports approval.

Consideration of the above factors supports final approval of the proposed Tokai Rika and Toyoda Gosei settlements. Settlement Class Counsel respectfully submit that the proposed settlements are in the best interests of the Settlement Classes and should be finally approved.

IV. **NOTICE WAS PROPER UNDER RULE 23 AND CONSISTENT WITH DUE PROCESS**

Federal Rule of Civil Procedure 23(e)(1) provides that a court must direct notice in a "reasonable manner" to all class members who would be bound by a proposed settlement. Rule 23(e) notice must contain a summary of the litigation sufficient "to apprise interested parties of

the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW*, 497 F.3d at 629 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).  *Accord In re Insurance Brokerage Antitrust Litig.*, 297 F.R.D. 136, 151 (E.D. Pa. 2013).

For class actions certified under Rule 23(b)(3), the court must also "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). The notice must clearly and concisely state: (1) the nature of the action; (2) the class definition; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through counsel; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on class members under Rule 23(c)(3).  *Id.*

The notice program and forms of notice utilized by Plaintiffs satisfy these requirements.[8] The Notice sets forth all information required by Rule 23(c)(2)(B) and 23(e)(1), and also describes the proposed plan of distribution of settlement funds[9] and apprises Settlement Class members that Settlement Class Counsel will seek an award of attorneys' fees and litigation expenses, and incentive awards to the Class Representatives.  Pursuant to the Notice Order, on May 16, 2018, 1,342 copies of the Notice were mailed, postage prepaid, to all potential Settlement Class members identified by Defendants.  The Summary Notice was published in one

---

[8] The proposed forms of notice and the notice program have been approved by the Court in this litigation (*Occupant Safety Systems* (2:12-cv-00601, Doc. Nos. 97, 116), and in other cases, including *Instrument Panel Clusters* (2:12-cv-00201, Doc. No. 91) and *Wire Harness* (2:12-cv-00101, Doc. Nos. 162, 319, 474).

[9] A Proof of Claim Form was sent to Settlement Class members along with the Notice.  A copy of the Claim Form is included in Exhibit A.

edition of *Automotive News*, and in the national edition of *The Wall Street Journal*, on May 21, 2018. In addition, a copy of the Notice was (and remains) posted on-line at www.autopartsantitrustlitigation.com.[10]

The content and method for dissemination of notice fulfill the requirements of Federal Rule of Civil Procedure 23 and due process. *See Packaged Ice*, 2011 WL 717519, at \*5.

## V. THE PROPOSED PLAN FOR DISTRIBUTION OF THE SETTLEMENT FUNDS IS FAIR, REASONABLE AND ADEQUATE AND MERITS APPROVAL

Approval of a settlement fund distribution in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan of distribution must be fair, reasonable and adequate. *Packaged Ice*, 2011 WL 6209188, at \*15. *Accord Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 326 (3d Cir. 2011); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 107 (E.D. Pa. 2013); *Law v. National Collegiate Athletic Ass'n.*, 108 F. Supp. 2d 1193, 1196 (D. Kan. 2000). As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is a reasonable one. *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000); *Smith v. MCI Telecoms Corp.*, No. Civ. A. 87-2110-EEO, 1993 WL 142006, at \*2 (D. Kan. April 28, 1993); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §12.35, at 350 (4th ed. 2002) ("*Newberg*") (noting that pro-rata allocation of a settlement fund "is the most common type of apportionment of lump sum settlement proceeds for a class of purchasers" and "has been accepted and used in allocating and distributing settlement proceeds in many antitrust class actions"). An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel. As with other aspects of a settlement, the opinion of experienced and

---

[10] Consistent with paragraph 19 of the Notice Order, a Declaration or Affidavit confirming that notice to the Settlement Classes was disseminated in accordance with the Notice Order will be filed at least 10 days prior to the Fairness Hearing.

informed counsel is entitled to considerable weight. *In re American Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001).

The Notice sent to potential Settlement Class members on May 16, 2018 describes the plan recommended by Settlement Class Counsel for the distribution of settlement funds to Settlement Class members who file timely and proper claim forms. The proposed distribution plan provides for the Tokai Rika and Toyoda Gosei Settlement Fund, with accrued interest, to be allocated among approved claimants according to the amount of their recognized transactions during the Class Period, after payment of attorneys' fees, litigation and administration costs and expenses, and incentive awards for the Class Representatives. (Notice, Exhibit A at 4).

This Court, and numerous others, have approved similar pro-rata distribution plans, including in connection with the prior settlement fund distribution in this litigation. (2:12-cv-00601, Doc. No. 129). *See* 4 *Newberg*, §12.35, at 353-54 (noting propriety of pro-rata distribution of settlement funds). "Settlement distributions, such as this one, that apportion funds according to the relative amount of damages suffered by class members have repeatedly been deemed fair and reasonable." *In re Vitamins Antitrust Litig.*, No. 99-197, 2000 WL 1737867, at *6 (D. D.C. March 31, 2000) (finding proposed plan for pro-rata distribution of partial settlement funds was fair, adequate and reasonable). *Accord Prandin Direct Purchaser Antitrust Litig.*, C.A. No. 2:10-cv-12141-AC-DAS, 2015 WL 1396473, at *3 (E.D. Mich. Jan. 20, 2015) (approving a plan as fair, reasonable and adequate that utilized a *pro rata* method for calculating each class member's share of the settlement fund). The proposed plan for allocation and distribution satisfies the above criteria and should receive final approval.[11]

---

[11] Settlement Class members may share in the distribution of the of the Toyoda Gosei and Tokai Rika Settlement Fund by completing and submitting the Claim Form included with the Notice, postmarked no later than August 17, 2018. Alternatively, if a Settlement Class Member

## VI.   CERTIFICATION OF THE DIRECT PURCHASER SETTLEMENT CLASSES FOR PURPOSES OF EFFECTUATING THE PROPOSED SETTLEMENTS IS APPROPRIATE

The Court found that Rule 23's requirements were met and provisionally certified, for purposes of the proposed settlements only, the following classes:[12]

The Toyoda Gosei Settlement Class is defined as follows:

> All individuals and entities (excluding Defendants and their present and former parents, subsidiaries, and affiliates) who purchased Occupant Safety Systems in the United States directly from one or more Defendants from January 1, 2003 through February 25, 2015.

Preliminary Approval Order at ¶ 4.

The Tokai Rika Settlement Class is defined as follows:

> All individuals and entities who purchased Occupant Safety Systems in the United States directly from one or more Defendants or their co-conspirators (or their controlled subsidiaries, affiliates, or joint ventures) from January 1, 2003 through February 25, 2015. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies and instrumentalities).

Notice Order at ¶ 4.

---

previously submitted a valid Claim Form in connection with the Autoliv and TRW settlements, and remains in either or both of the Toyoda Gosei and Tokai Rika Settlement Classes (and does not wish to provide any additional information), the information in its original Claim Form will be used to determine its share of the Tokai Rika and Toyoda Gosei settlement proceeds.  (Notice, Exhibit A at 4, Claim Form at 1).

[12] For purposes of the Toyoda Gosei and Tokai Rika Settlement Class definitions, the following entities are Defendants: Autoliv, Inc., Autoliv ASP, Inc., Autoliv Safety Technology, Inc., Autoliv B.V. & Co. KG, Autoliv Japan Ltd., Takata Corporation, TK Holdings, Inc., Tokai Rika Co., Ltd., TRAM, Inc. d/b/a Tokai Rika U.S.A. Inc., Toyoda Gosei Co., Ltd., Toyoda Gosei North America Corp., TG Missouri Corp., TRW Automotive Holdings Corporation, and TRW Deutschland Holding GmbH.

It is well established that a class may be certified for purposes of settlement.  *See, e.g.,* *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 24;  *Cardizem,* 218 F.R.D. at 516-19; *Thacker v. Chesapeake Appalachia, LLC*, 259 F.R.D. 262, 266-70 (E.D. Ky. 2009).[13]

As demonstrated below, the Settlement Classes meet all of the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(3) for settlement purposes.

### A.      The Proposed Direct Purchaser Settlement Classes Satisfy Rule 23(a).

Certification of a class requires meeting the requirements of Fed. R. Civ. P. 23(a) and one of the subsections of Rule 23(b).  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850-51 (6th Cir. 2013); *Ford*, 2006 WL 1984363, at *19 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)).   Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  *Griffin*, 2013 WL 6511860, at *5; *Date,* 2013 WL 3945981, at *3.

### 1.      The Settlement Classes are Sufficiently Numerous.

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a)(1).  There is no strict numerical test to satisfy the numerosity requirement; the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Whirlpool*, 722 F.3d at 852 (noting that

---

[13] Paragraph 10 of the Preliminary Approval Order and Paragraph 23 of the Notice Order provide that provisional certification of the Settlement Classes will be without prejudice to the rights of any Defendant to contest certification of any other class proposed in these coordinated actions.  *See Packaged Ice*, 2011 WL 717519, at *7.

"substantial" number of class members satisfies numerosity). Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

Here, copies of the Notice were mailed to over 1,300 entities, geographically dispersed throughout the United States, that have been identified by Defendants as potential direct purchasers of Occupant Safety Systems. Thus, joinder of all Settlement Class members would be impracticable, satisfying Rule 23(a)(1).

### 2. There are Common Questions of Law and Fact.

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action involve "questions of law or fact common to the class." "We start from the premise that there need be only one common question to certify a class," *Whirlpool*, 722 F.3d at 853, and "the resolution of [that common issue] will advance the litigation." *Sprague*, 133 F.3d at 397. *Accord Barry v. Corrigan*, 2015 WL 136238, at *13 (E.D. Mich. Jan 9, 2015); *Exclusively Cats Veterinary Hosp. v. Anesthetic Vaporizer Servs., Inc.*, 2010 WL 5439737, at * 3 (E.D. Mich. Dec. 27, 2010) ("[T]here need be only a single issue common to all members of the class") (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1080 (6th Cir. 1996)).

It has long been the case that "allegations concerning the existence, scope and efficacy of an alleged conspiracy present questions adequately common to class members to satisfy the commonality requirement." *In re Flat Glass Antitrust Litig.*, 191 F.R.D 472, 478 (W.D. Pa. 1999) (citing 4 *Newberg On Class Actions,* § 18.05-15 (3d ed. 1992)). Here, whether Defendants entered into an illegal agreement to artificially fix prices of Occupant Safety Systems is a factual question common to all members of the Settlement Classes because it is an essential element of proving an antitrust violation. *See, e.g., Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 25. Common legal questions include whether, if such an agreement was reached, Defendants

21

violated the antitrust laws and the impact on Class members.  *Packaged Ice*, 2011 WL 717519, at *6 (commonality requirement satisfied by questions concerning "whether Defendants conspired to allocate territories and customers and whether their unlawful conduct caused Packaged Ice prices to be higher than they would have been absent such illegal behavior and whether the conduct caused injury to the Class Members").  "Indeed, consideration of the conspiracy issue would, of necessity, focus on defendants' conduct, not the individual conduct of the putative class members."  *Flat Glass*, 191 F.R.D. at 484.  Because there are common legal and factual questions related to potential liability, the commonality requirement of Rule 23(a)(2) is met.

### 3.   Direct Purchaser Plaintiffs' Claims are Typical of Those of the Settlement Classes.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "If there is a strong similarity of legal theories, the requirement [of typicality] is met, even if there are factual distinctions among named and absent class members."  *Griffin*, 2013 WL 6511860, at *6 (quoting *Ford Motor*, 2006 WL 1984363, at * 19); *Date*, 2013 WL 3945981, at *3.

"Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'"  *Whirlpool*, 722 F.3d at 852 (quoting *Sprague*, 133 F.3d at 399).  Here, Plaintiffs' claims arise from the same course of conduct as the claims of the other Settlement Class members: Defendants' alleged violations of the antitrust laws. Plaintiffs and the other members of the Settlement Classes are proceeding on the same legal claim, alleged violations of Section 1 of the Sherman Antitrust Act.  *See UAW*, 497 F. 3d at 625; *Barry*, 2015 WL 136238 at *13.  Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### 4.   Plaintiffs Will Fairly and Adequately Protect the Interests of the Classes.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class.  "There are two criteria for determining adequacy of representation: (1) the proposed class representative must have common interests with the other class members; and (2) it must appear that the class representative will vigorously prosecute the interests of the class through qualified counsel."  *Sheick v. Automotive Component Carrier LLC,* No. 09–14429, 2010 WL 3070130, at *3 (E.D. Mich. Aug. 2, 2010) (quoting *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 524-25 (6th Cir. 1976)).

These requirements are met here.  The interests of the proposed Settlement Class representatives - Beam's Industries, Inc., Findlay Industries, Inc., and NM Holdings Company, LLC - are the same as those of other Settlement Class members.  Plaintiffs are direct purchasers of Occupant Safety Systems from a Defendant in the United States.  Plaintiffs and the other Settlement Class members claim that they were injured as a result of the alleged conspiracy and seek to prove that Defendants violated the antitrust laws.  Plaintiffs' interests are thus aligned with those of the Settlement Classes.

Moreover, Plaintiffs have retained qualified and experienced counsel to pursue this action.[14]  Settlement Class Counsel vigorously represented Plaintiffs and the Settlement Class in the settlement negotiations with Tokai Rika and Toyoda Gosei and have vigorously prosecuted this action.  Adequate representation under Rule 23(a)(4) is therefore satisfied.

---

[14] Rule 23(g) requires the court to examine the capabilities and resources of class counsel to determine whether they will provide adequate representation to the classes.  The Court previously appointed Freed Kanner London & Millen LLC, Kohn, Swift & Graf, P.C., Preti, Flaherty, Beliveau & Pachios LLP, and Spector Roseman & Kodroff, P.C. as Interim Co-Lead Counsel in this case and all other *Automotive Parts Antitrust Litigation* cases.  They submit that, for the same reasons that the Court appointed them to that position, their appointment as Settlement Class Counsel is appropriate.

B.     **Plaintiffs' Claims Satisfy the Prerequisites of Rule 23(b)(3) for Settlement Purposes.**

In addition to satisfying Rule 23(a), plaintiffs must show that the proposed class action falls under at least one of the three subsections of Rule 23(b).  Here, the Settlement Class qualifies under Rule 23(b)(3), which authorizes class certification if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and… a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  *In re Scrap Metal Antitrust Litig.,* 527 F.3d 517, 535 (6th Cir. 2008); *Hoving v. Lawyers Title Ins. Co.*, 256 F.R.D. 555, 566 (E.D. Mich. 2009).

1.     **Common Legal and Factual Questions Predominate.**

Rule 23(b)(3)'s requirement that common issues predominate ensures that a proposed class is "sufficiently cohesive" to warrant certification.  *Amchem*, 521 U.S. at 623.  The predominance requirement is met where "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 564 (6th Cir. 2007) (citation omitted).

Courts have repeatedly recognized that horizontal price-fixing cases are particularly well-suited for class certification because proof of the conspiracy is a common, predominating question.  *Scrap Metal*, 527 F.3d at 535; *Automotive Parts*, 2:12-cv-00103, Doc. No. 497, at 27; *In re Southeastern Milk Antitrust Litig.*, No. 2:07-CV-208, 2010 WL 3521747, at *5, 9-11 (E.D. Tenn. Sept. 7, 2010).  Affirming class certification in *Scrap Metal,* the Sixth Circuit observed that the "district court found that the '*allegations* of price-fixing and market allocation…will not vary among class members'….  Accordingly, the court found that the 'fact of damages' was a

question common to the class even if the amount of damages sustained by each individual class member varied." 527 F.3d at 535 (emphasis in original).

In this case the same set of core operative facts and theory of liability apply to each member of the Settlement Classes. As discussed above, whether Defendants entered into an illegal agreement to artificially fix prices of Occupant Safety Systems is a question common to all Settlement Class members because it is an essential element of proving an antitrust violation. Common questions also include whether, if such an agreement was reached, Defendants violated the antitrust laws, and whether Defendants' acts caused anticompetitive effects. *See, e.g.*, *Packaged Ice*, 2011 WL 717519, at *6. If Plaintiffs and the other Settlement Class members were to bring their own individual actions, they would each be required to prove the same wrongdoing by Defendants in order to establish liability. Therefore, common proof of Defendants' violations of antitrust law will predominate.

### 2. A Class Action is Superior to Other Methods of Adjudication.

Rule 23(b)(3) lists factors to be considered in determining the superiority of proceeding as a class action compared to individual methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

All Occupant Safety Systems litigation is centralized in this Court. If a Settlement Class member wants to control its own litigation, it can request exclusion from either or both of the Settlement Classes. Thus, consideration of factors (1) – (3) demonstrates the superiority of a class action.

With respect to the factor (4), in *Amchem,* 521 U.S. at 620, the Court explained that when a court is asked to certify a settlement-only class it need not consider the difficulties in managing a trial of the case because the settlement will end the litigation without a trial.  *See Cardizem,* 218 F.R.D. at 517.

In addition, even though the Settlement Classes are not composed of small retail purchasers, "[g]iven the complexities of antitrust litigation, it is not obvious that all members of the class could economically bring suits on their own."  *In re Cardizem CD Antitrust Litig*, 200 F.R.D. 297, 325 (E.D. Mich. 2007) (quoting *Paper Systems Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 605 (E.D. Wisc. 2000)).   Moreover, by proceeding as a class action, both judicial and private resources will be more efficiently utilized to resolve the predominating common issues, which will bring about a single outcome that is binding on all members of the Settlement Classes. *E.g., Cardizem*, 200 F.R.D. at 351 ("The economies of time, effort and expense will be achieved by certifying a class in this action because the same illegal anticompetitive conduct by Defendants gives rise to each class member's economic injury.").   The alternatives to a class action are a multiplicity of separate lawsuits with possibly contradictory results for some plaintiffs, *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 234 (E.D. Pa. 2012), or no recourse for many class members for whom the cost of pursuing individual litigation would be prohibitive.  *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 527 (S.D.N.Y 1996).   Thus, class litigation is superior to the alternatives in this case.

## VII.    CONCLUSION

For the foregoing reasons, Direct Purchaser Plaintiffs respectfully request that the Court

grant final approval of the Tokai Rika and Toyoda Gosei settlements, certify the Tokai Rika and

Toyoda Gosei Settlement Classes for purposes of the settlements only, and approve the proposed

plan for distribution of the settlement funds.

DATED: June 18, 2018                              Respectfully submitted,

                                                   /s/David H. Fink
                                                  David H. Fink (P28235)
                                                  Darryl Bressack (P67820)
                                                  Nathan J. Fink (P75185)
                                                  FINK + ASSOCIATES LAW
                                                  38500 Woodward Ave; Suite 350
                                                  Bloomfield Hills, MI 48304
                                                  (248) 971-2500

                                                  *Interim Liaison Counsel for the Direct*
                                                  *Purchaser Plaintiffs*

Steven A. Kanner
William H. London                                 Joseph C. Kohn
Michael E. Moskovitz                              William E. Hoese
FREED KANNER LONDON                               Douglas A. Abrahams
   & MILLEN LLC                                    KOHN, SWIFT & GRAF, P.C.
2201 Waukegan Road, Suite 130                     1600 Market Street, Suite 2500
Bannockburn, IL  60015                            Philadelphia, PA  191037
Telephone: (224) 632-4500                         Telephone: (215) 238-1700

Gregory P. Hansel                                 Eugene A. Spector
Randall B. Weill                                  William G. Caldes
Michael S. Smith                                  Jonathan M. Jagher
PRETI, FLAHERTY, BELIVEAU                          Jeffrey L. Spector
   & PACHIOS LLP                                   SPECTOR ROSEMAN & KODROFF, P.C.
One City Center, P.O. Box 9546                    1818 Market Street, Suite 2500
Portland, ME  04112-9546                          Philadelphia, PA  19103
Telephone: (207) 791-3000                         Telephone: (215) 496-0300

*Interim Co-Lead Counsel for the Direct Purchaser Plaintiffs*

27

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 18, 2018, I electronically filed the foregoing paper with the

Clerk of the court using the ECF system which will send notification of such filing to all counsel

of record registered for electronic filing.

FINK + ASSOCIATES LAW

By: /s/Nathan J. Fink
David H. Fink (P28235)
Darryl Bressack (P67820)
Nathan J. Fink (P75185)
38500 Woodward Ave; Suite 350
Bloomfield Hills, MI  48304
Telephone: (248) 971-2500
nfink@finkandassociateslaw.com

28